Argument not to receive 15 minutes per side Mr. Daniel Scott Haraw, Supervising Attorney to be argued by law students, legitimate perpetrator, and my mother-in-law, Jerome. Good morning, Your Honors. May it please the Court. Daniel Scott Haraw on behalf of the Appellant Demond Liles. It is my distinct pleasure to introduce third-year law students and soon-to-be graduates, Ben Perlmutter and Mugdha Guram, who will be arguing under my supervision. How are you all breaking things down here? Ben will be doing opening and Mugdha will be doing rebuttal. Good morning, Your Honors. May it please the Court. Ben Perlmutter for Demond Liles. I'd like to reserve five minutes for rebuttal, please. Very well. Your Honors, this case rises and falls on the question of prejudice, and so I'd like to start there, if I may. Sure. And there are two points that I'd like to make regarding prejudice. The first is that under the rule of orderliness, this Court must apply the rules stated in both Joseph E. Coyle and Hall v. Fassbinder and ask if it's reasonably probable that the prosecutor's breach affected Mr. Liles' sentence. Ohio argues otherwise, but in neither its 28J letter nor its briefing has it argued     ever explained why those earlier cases don't apply. And the second is that under any proposed prejudice standard, Mr. Liles can show that he was prejudiced by the prosecutor's recommendation, and that's both because the judge's reasons for imposing sentence were full of untrue statements that could have come from nowhere in the record other than the prosecutor's colloquy, and because the only thing in the record that could have overcome the Ohio State law presumption of concurrent sentences was the prosecutor's advocacy. If your honors don't have any questions, I'd like to turn to the first point, the prejudice standard that applies. It's true that as Ohio noted in its 28J letter, this Court's recent Gaither decision relying on Jones v. Bell stated that a petitioner in Mr. Liles' shoes must meet first the Strickland prejudice standard and then a higher actual prejudice standard. And it's understandable that it did so because Gaither was a faithful application of Jones, which outlined that higher standard, and because in both Gaither and Jones, the petitioners didn't brief what the correct prejudice standard was. The higher standard being basically but-for-cause as opposed to a reasonable probability of prejudice? Your Honor, I'm not sure that the actual prejudice standard has been clearly defined. The Supreme Court a while ago in Frady said that the back court had never given precise content to what the prejudice standard was. So I'm not sure if it is a but-for-cause standard or not, but in any case, the Strickland standard is lower. It's a reasonable probability. And if you can't meet that standard, then you lose, right? The Strickland standard is the minimum you have to meet, correct? Right. Yes. Okay. So tell me, how is there a substantial likelihood that this outcome would have been different? Your Honor, I think there are a few reasons, and I'd like to address them all if I may. The first is the remarkable similarities between the prosecutor's colloquy and the judge's colloquy. The second is that the prosecutor's recommendation was the only thing in the record that could have overcome the Ohio law presumption of concurrent rather than consecutive sentences. How is that exactly? Your Honor, at the sentencing hearing, every other person who spoke spoke in favor of a shorter sentence for Mr. Lyles. Mr. Lyles himself, his attorney, the two other witnesses who spoke up all gave reasons why the sentence should be short. And the only thing on the other side of the ledger was the prosecutor's advocacy for a much, much longer sentence. Here's one of the issues I have with your position. I think that describes most sentencing hearings, question mark? I mean, right? So how is this? Is it possible that you are kind of overstating the prosecutor's impact on a sentencing judge's decision? Your Honor, I don't think so. And one reason I don't think so is because of the remarkable similarities between the prosecutor's advocacy and the judge's reason for imposing sentence that included things that were untrue about the case that were not supported by anything at the sentencing hearing other than the prosecutor's statements. So for example, the prosecutor at this hearing says, and this is that page ID 2388, how many people have been shot, killed, maimed, and injured as a result of these illegal activities and drugs? Is this the worst form of the offense? You bet it is. And then you see pages later, the judge speaking to Mr. Lyle say, how many people maybe that you didn't sell directly to, but ended up receiving the cocaine that began with you, how many of those people were killed by guns or committed other crimes? I mean, aren't these rhetorical questions? I don't think so. Again, as the judge said, there was an objection made earlier in the proceeding to the enterprise comment. Judge said, just let the prosecutor talk. This is sentencing talk. I don't think so, Your Honor, because when we get to the part of the hearing where the judge is explaining why he's running the sentences consecutively rather than concurrently, he says, I would find that the harm caused by two or more of the multiple offenses is so great and unusual that no single prison term for any of the offenses committed as part of the course of conduct adequately reflects the seriousness of the conduct. So one of the reasons he gives for imposing a consecutive rather than a concurrent sentence is the exact harm that the prosecutor alludes to earlier, which of course we know there was no harm because drugs didn't go into the community. And so it's not just a rhetorical statement because the judge relies on it as a reason for running the sentences consecutively rather than concurrently. I mean, there was a great, I mean, your client was responsible for a very large amount of cocaine distribution, right? I mean, do you recall the amount that he was responsible for his sentencing? I don't remember the exact amount. We agree he was sentenced. I mean, it was really large. Yeah, he was sentenced for, he was charged and convicted or pled guilty to selling a great deal of cocaine. But it was, and I think it's important to note that it was all part of controlled by, set up by a sheriff who's now in federal prison, prosecuted by DOJ for setting up this sting operation. Mr. Lyles had had a clean record for about 13 years before this. And he expresses remorse and explains the situation that he was in. I mean, the judge really didn't seem to think that your client was unequivocal in his expression of remorse. And I think it's important to note that, your honor, that before the judge came to that, made those statements when he was speaking to Mr. Lyles, the prosecutor had already made the unlawful breach of the plea agreement and talked about how Mr. Lyles wasn't remorseful because he had a, this was a lifestyle and a career for him, all of which the prosecutor wasn't allowed to do under the plea agreement. So that tainted the judge's view of Mr. Lyles. And I think otherwise the judge could have found that Mr. Lyles was remorseful because the first thing he says at the colloquy was, I apologize for being here today. Can I ask a question? I want to go back to this. Are you saying that everything the prosecutor said related to the sentencing was a breach? In other words, if he's saying things about the circumstance of the crime or the impact, that's not a breach of the plea agreement, is it? I think, your honor, that what was a breach of the plea agreement as the Ohio Court of Appeals held is a statement suggesting or intimating the length of sentence that should be imposed. And so I think that includes those two statements that the judge owed it, for example, that the judge owed it to the community to put Mr. Lyles away for a very, very long time, but also all of the things earlier that explain why the judge owed it to the community to put him away for a very, very long time, which included saying that the kids in the community will be better off without Mr. Lyles in it, that this was the worst form of the... What did the agreement say? It says no specific recommendation, right? No, your honor, it says no recommendation. At the colloquy, the prosecutor says no specific recommendation, but the plea deal itself, the paper contract, says no recommendation. It does say that the... At the length of the sentence, right? No recommendation as to sentence, correct. But that left the prosecutor free to talk about the, quote, huge amount of cocaine. I think that the prosecutor could definitely... Totally free to talk about that. He could say how much cocaine Mr. Lyles... Recidivism, his long criminal record, all that was fair game. All of that... I mean, I don't think the judge either was such a passive instrument here. I mean, this judge seemed to have very emphatic views of his own, and he issues a sentence of 25 years, which is within the guideline range for your client's sentence, which ran up to 31 years. So I mean, how can we infer from this after the fact that he's just so manipulated by this argument? I think that all that Strickland requires, your honor, is that the colloquy undermines confidence in the sentence. And I agree that there was a range anywhere from about 11 to 31 and a half years, and Mr. Lyles got much, much more than the minimum and much, much more than what he asked for. And the only person asking for anything else was the prosecutor. And I think, just to go back to your point, Judge Nalbandi, and I think that what you wrote in U.S. v. Warren is instructive, that prosecutors are barred not only from explicit repudiations of their plea agreements, but also end runs around them. And I think if the prosecutor could say to the judge at sentencing, your honor, this person did the worst form of the offense, he's a danger to his community, this is a lifestyle for him, and he's a high level of recidivism, and just not say that last statement, that, to me, looks a lot like an end run around, at best, an end run around a recommendation. Yeah, I don't know about that. I mean, I hear what you're saying, but going through a sentencing without talking about what the defendant did, I mean, yeah, the prosecutor could agree to that. I mean, he could say, I'm just going to sit there like a wallflower and not make any comments at all. But, your honor, I think two points on that. The first is that I don't think that the prosecutor only talked about what Mr. Lyles did. For one thing, he incorrectly stated that these drugs ended up in the community and caused harm. The second is that he said numerous things, including- I mean, how do we know that's incorrect? I mean, he dealt a huge amount of cocaine in the community. Granted, we don't have direct evidence of the harms it caused, but presumably, a huge amount of cocaine in a community is causing harm. Your honor, I see my time is running low, but I'll stop. I think in terms of the things that Mr. Lyles was being convicted of here, these were only controlled buys, and so all the drugs that he was being convicted of here, and for which he could be sentenced, only went to a room in the sheriff's office. But, I mean, the judge could take account of the much larger amount of cocaine he's responsible for, not just controlled buys. Sure, yes, but I also just want to point to a few other things in the record that I think aren't describing what Mr. Lyles did, but are effectively making a recommendation. At page 8 of the sentencing hearing, he says that it's necessary to protect the public. At page 7, I believe he said that kids in the community will be better off without Mr. Lyles in it, and he repeatedly says that this is the worst form of offense. And all of that, I think, is what he means at the end of his recommendation when he says that the judge owed it to the community to put Mr. Lyles away for a very, very long time. And I think that has to at least undermine confidence in the sentence, because the prosecutor was the only person advocating for that longer sentence. There is on the form the option that the state will remain silent in sentencing, right? I agree that the prosecutor, yes, and I think the prosecutor... It's not, that wasn't the bargain. Agreed, yes. And so I think the prosecutor was allowed to speak. I just don't think he could say that the judge owed it to the community and explain that that was because Mr. Lyles was such a big danger to the community, which isn't borne out by the evidence on the record. All right, very well. Thank you for your argument. Thank you, Your Honor. We'll hear from the warden. Morning, Your Honors. Morning. May it please the court. So I agree with my friends on the other side that the simplest way to dispose of this case is on the prejudice prong of the cause and prejudice rule. We think that Coleman Actual Prejudice is the proper standard there, but even if this court decides that Strickland Prejudice applies, we win on that too. I want to start by clarifying exactly what this court needs to take into account in its prejudice analysis because there's some confusion today. My friends on the other side today are saying that everything that the prosecutor said was a recommendation, but that's not true for two reasons, and that's there's a substantive reason and a preservation-based reason. Why not? To start with the substantive reason, on any kind of prejudice under either Strickland or Coleman, the prejudice has to flow from a particular breach. The court essentially asks, if this particular breach hadn't happened, what would have been the outcome? Would the outcome have been different? So it's important to look at, and that brings me to the preservation problem, is it's important to look at exactly how Mr. Liles has characterized the breach and how the lower court and the state court has as well. Eight times in Mr. Liles' opening brief, that's every single time that he's referred to the breach, he refers to these two short statements and how they breached the plea agreement, and did so three more times in the reply brief, and that makes sense. Very, very long sentence, you know, statement. Yes, the two short statements of, for a very long sentence and a substantial sentence. Now those are two statements at the end of six pages of argument. How much can you say that is extremely negative, et cetera, without de facto crossing the line to telling the judge precisely that, very, very long? Well, it depends on the plea agreement, Your Honor. Looking again at the plea agreement here, that's at page ID 1185 to 86. It's not just simply, as Judge Nelvanian's questions pointed out, it's not simply a promise not to make a sentencing recommendation. It's a qualified promise to make no sentencing recommendation while reserving the right to be heard. Well, I don't, I don't really read those two boxes on this list of boxes to check or not check as kind of related to each other. I think this plea form has a lot to be desired, to be frank, but it says, capital letters, make no sentencing recommendation. You guys checked that box. You agreed to that. That's right, Your Honor. And it also, Mr. Liles agreed to allow the state to be, the prosecutor to be heard at a sentencing agreement and specifically did not, the state did not agree to remain silent. And I think... Right, but okay, so how is, okay, I want a longer, much longer sentence or a very, very substantial sentence. That is a sentencing recommendation, isn't it? Well, I want to be clear, Your Honor, that that's getting into the merits of the breach comment and we don't have to get there because... Well, I'd like an answer to the question. Is it a sentencing recommendation to ask for a very substantial sentence? Again, it depends, I think, on the sentencing agreement. Here, it's not clear that that's a breach. I think it's a harder case for us, Your Honor, but we don't have to get there because this case is easily resolved on the... I mean, there's no difference between very substantial and long, right? That's right, Your Honor. So, it's a sentencing recommendation. Now, you... Go ahead. No, you. This is a hill. I guess I'd suggest not dying on this hill. Right. Right? I mean, I... Yeah. This is not your best argument. That's right, Your Honor. Because this case is disposed of on prejudice, I'm going to focus there and it's just the two short statements of that alleged breach. Does a defendant... And so, let's talk about prejudice. Does a defendant in this type of scenario have to point to the judge saying, you know, I was going to do 10 years, but because of what the prosecutor said, I'm going to do 15? That would certainly be evidence, Your Honor, and it's the... It's Mr. Law's burden to show that. But is that required? If there's other evidence, maybe not, Your Honor. But here, there is no evidence, as the 3rd District, the State Court decided, and also the District Court below, that there is no evidence in this record. That would be required if we got to actual prejudice. What's the daylight between the Strickland and the Coleman if we were going to go there? I think that that would probably... That would probably satisfy actual prejudice, the Coleman standard. I don't think that there's as much daylight between the two. As Your Honors know, there's, you know, valid Strickland claims, they're not exactly growing trees. They're still pretty hard to get. But, regardless, because it can be resolved on Strickland, there's no... This Court doesn't need to answer that question specifically. Yeah, no, I got that, but I'm just curious what the... I think that... What your position is on what... Yeah, I think that if the sentencing judge said that I specifically took... Specifically the prosecutor said that he wants a substantial sentence, I would have given a shorter sentence, but because of what the prosecutor said, I'm going to give a 25-year sentence instead of a 20-year sentence. That would meet Coleman prejudice, certainly, Your Honor. But, I mean, you know, the judge doesn't have to expressly invoke the prosecutor as the causing factor in the sentence to meet the standard, right? That's true, Your Honor, and maybe here's where I want to back... I mean, why don't you tell us why you think, looking at the totality of the sentencing transcript, why you think it was not so important? I mean, what the prosecutor said about very, very long sentence, et cetera, was not that big a deal. Why don't you try to make that argument? It's very inconsequential in the full context of the sentencing hearing, those two short statements. As you know, there was six pages of argument beforehand, and the broader context of the sentencing hearing is important here. So before the sentencing hearing even occurred, Mr. Liles filed a sentencing memo with the sentencing court, and in that sentencing memo, he made arguments under the statutory sentencing factors that the sentencing judge was required to take into account, and used words like protection of the public from future crime, whether the sentence he was asking for, 14 years, was commensurate with the conduct and consistent with other similar conduct, whether it was the worst form of the offense, seriousness and recidivism factors, and whether the sentence he was asking for would demean the seriousness of the offense. So that was before the sentencing hearing even occurred. So in the broader context of the sentencing hearing, the prosecutor, who reserved the right to be heard, was coming in and making these arguments under these exact same sentencing factors, using the language of the Ohio revised code, the language that the judge had to consider. So it's better thought of as rebutting the arguments that Mr. Liles already made. And so all of that permissible argument is just, again, under the sentencing factors that the court would have to hear. And then after that occurred, there's 15 pages of back and forth with Mr. Liles and the sentencing judge, going over criminal history, his remorse for the crime. And I want to also just clarify something my friends on the other side said regarding the effect this had on the community and these kind of crimes. First of all, under the sentencing factors, general deterrence is something that the court has to consider. So crimes like this, it's important for the court to know, for the court to consider exactly how this kind of crime, not the specific crime, but how this kind of crime affects the community. But second of all, these were not all rhetorical questions, because you'll notice that the question immediately before the court says, how many people has your conduct before harmed, the court asks why he returned to selling drugs. Now in the pre-sentence report and in the sentencing hearing, it's clear that Mr. Liles has a history of drug trafficking offenses. And so that was simply a follow up of, Mr. Liles has a history of these kinds of crimes and the judge was really interested in why he would return to these after a long time of no similar offenses. So to get specifically into the prejudice arguments that My Friend on the Other Side makes, they make three of them. One of them is that the sentencing judge said that he took all statements at the sentencing hearing into consideration. Second is that the sentencing judge parroted the prosecutor's concerns. And third is that the sentencing judge, in fact, imposed a lengthy sentence. Starting with the second one, as I've said, the only two statements that this court needs to consider for prejudice analysis are the purported breach, which is two short statements. So the fact that the sentencing judge's language, the language of the Ohio revised code, is similar to the prosecutor's, is not something that this court needs to take into account in its prejudice analysis. First, the first argument that the sentencing judge said... What about the reliant, alleged reliance on, like, misstatements by the prosecutor? So... Are you suggesting that they were not misstatements or that they were not relied on or both? I'm saying they're not misstatements, Your Honor. As I was just saying that they were to be considered for general deterrence purposes and also the fact that Mr. Liles has previously had drugs run into the law. So they weren't part of the breach? No, that's right, Your Honor. But would you... No, go ahead. I mean, he got a little bit out there, he, the prosecutor. I mean, how many BNEs, how many things are stolen from garages? I mean, I think he's just kind of freelancing a little bit about, you know, potential effects of drug addiction in the community. But there was nothing in this record of this case to show that the drugs involved were leading to these things, were there? There's nothing specifically about this conduct that shows that specific conduct stemming from it. But it is a general deterrence issue in that these kind of crimes lead to that sort of further down the line conduct. And that's consistent with the general deterrence factors that Rise Code 2929-12 requires the court to take into account. Was it the same prosecutor that entered into the plea agreement that handled the sentencing? That's right, Your Honor, yes. Let me offer... This is just speaking for me, okay? And I don't know what we'll do in this case. It's a habeas posture, very difficult for Mr. Liles. You know, I think the way the prosecutor approached sentencing, at least in these last few sentences, was a little slick. And I don't mean that as a compliment. I understand, Your Honor. If I could get back to the specific arguments that Mr. Liles is making for prejudice, that the sentencing judge said that he took into account all the statements of people, all the statements that people at the sentencing hearing said. That's just kind of a matter of course for a judge imposing a sentence. This is after he analyzed all the sentencing factors and said he took into account everything that everyone said. Of course, he was required by law to. And if anything, he pointed out the defendant. He said everything that... All the statements that were in the court today, including the defendant, without specifically mentioning the prosecutor. And the third argument that Mr. Liles makes for prejudice is that he, in fact, imposed a substantial sentence. There's a 25-year sentence with a 31-and-a-half-year maximum. It's not unheard of that a judge goes beyond what... A sentencing judge goes beyond what a defendant asks for in a sentencing hearing. The judge doesn't come into these sentencing hearings in a vacuum. He already had all the discovery, the pre-sentence investigation report, and the sentencing memo. Well, it's more than double the bottom of the range, right? 11-and-a-half? It's more than double. I think it's about 70% of the way toward the top of the range. It's in the range. It's in the range, but six-and-a-half years less than the maximum, Your Honor. And taking into account the 15-page colloquy with Mr. Liles and the permissible argument with the prosecutor under the sentencing factors, these two short statements that are the alleged breach at issue here did not... Under neither Coleman nor Strickland... They don't create a reasonable probability that he added, say, one or two years? No, Your Honor. I mean, how do we make that determination? I mean, this is not like, you know, reviewing the sufficiency of the evidence for a factual finding. I mean, you know, this is like trying to get inside of somebody's head in terms of whether this carrying on by the prosecutor, and I agree with Judge Ritz's description of the way the prosecutor presented. I mean, how do we make that determination about what's going on in the judge's head to a reasonable probability? Well, like any prejudice analysis, Your Honor, you have to look at the alleged breach, and here that's a needle in a haystack of permissible arguments. There's no evidence in the record that Mr. Liles can point to other than within this permissible argument that, well, it may have been slick, Your Honor, I can see that, but certainly not within the breach. It's the mismatch between what the prosecutor asked for, or excuse me, what my friends on the other side are saying the breach is and what their arguments are in the prejudice analysis. All right. We're running out of time. Thank you. All right. Thank you, Mr. Thiessen. We'll hear rebuttal. Now, normally we don't let this split argument thing happen, but today we are. I appreciate it, Your Honor. Good morning, and may it please the Court. Mugdugurum appearing for Damond Liles, and I'd like to reserve five minutes for rebuttal. I thought this is a rebuttal. Yes. Sorry. Okay. For this rebuttal. That's fine. I've done worse at a podium. Good to know. I have three points to make on rebuttal. I'd like to begin with the State's point on breach. Noah, I think Your Honors pick up on the fact that this argument is clearly more than just the prosecutor's argument that this deserves a very, very substantial sentence and a much longer sentence, but also includes statements like this was the worst form of the offense. And I'd like to point out that we didn't waive this point. The State waived this point. We would have been happy to brief this more thoroughly, but I think our brief clearly treats the entire colloquy as a problem by pointing to these statements like it was the worst form of the offense and that Mr. Lyles was a career offender. I guess some of these more kind of gratuitous or inflammatory comments, I mean, one could say, inform us about the harm caused by the breach. I mean, there's basically no dispute that the prosecutor breached the agreement. And if he goes in there and it's just milquetoast and he says what he says at the end, that's one thing. But when he's, you know, using all these sort of, I don't know, flamboyant statements and so on, then maybe that makes the breach a little more significant. But still, I mean, I would ask you the same question I asked your friend on the other side. I mean, really, how, I mean, this judge really had some strong views of his own by all appearances. So, I mean, how do we infer here that actually this did make a difference or likely did, whatever we think the standard is? Absolutely, Your Honor. I think the judge's reasoning, because it mirrors the prosecutor's reasoning so much throughout his decision making, but particularly... It's the same factors that everybody's working with. It is the same factors, but I think the fact that the prosecutor spoke first influenced how the judge viewed those factors when making his decision. So when the judge speaks about recidivism, you can parallel that right back to when the prosecutor discusses Mr. Lyles' lifestyle and his career of dealing drugs, despite the fact that Mr. Lyles had gone 13 years without any drug offense. And that's on page ID 2389 to 2399. The judge similarly dismisses the validity of the ORAS score as the prosecutor does on page ID 2386. When the judge talks about protecting the public and punishing the defender, you can point back to the prosecutor's statements on this being an enterprise, on people watching to see the effect on the community, and that's on page ID 2389. Well, it sure was an enterprise. I mean, it was a large criminal organization, or a large... I mean, what did the judge say? It was like organized criminal activity. It certainly was that, to move this amount of cocaine, right? Your Honor, I would disagree, because I think Mr. Lyles was clear in his colloquy with the court that these were extenuating circumstances, that he was afraid for his children's safety, that he had taken steps to go to the sheriff and receive help, and taken any steps he could to mitigate the harm, including minimizing the level of drugs to $10,000, the exact amount he needed to kind of deal with this threat. So I think Mr. Lyles was clear that this risk of recidivism wasn't nearly as high as the prosecutor was intimating. I see I'm low on time, so I want to move to the point that for prejudice, this is a very minimal standard. Really, all that's required out of in-race sealed cases, even a single day of this being influenced, and I think we have this standard for a few different reasons, right? One, I think anyone in here would balk at being put in prison for a single day because of someone else breaching an agreement with you. I think this also comes out of the standard that we have under Mont's advice that prosecutors are held to a high standard, that we need to protect the sanctity of plea agreements, and that defendants are giving up their constitutional rights when they enter into these plea agreements. So the prosecutors have a duty to meet that high bar of performance and to uphold the plea agreement that they enter into. I lastly want to talk a little bit about remedy. We request in our brief either withdrawal or resentencing before a different judge. We wouldn't oppose either, but we feel that withdrawal is more appropriate in this case. Under Santabello, the justices hold that in cases where there's an outraged sense of fairness in regards to breach and sentencing, that withdrawal is more appropriate and that considerable or even controlling weight should be given to the defendant's preference. Here, that would be withdrawal. And I think because this court has such broad discretion to fashion that remedy, that it's appropriate to issue him this habeas relief. Very well. Thank you. Well, we thank you both for your arguments, all of you. And we have a New York University Law School student clinic, right? Apparently you're here all day. Won't be going anywhere. I mean, it was exemplary on both sides, but I just want to make clear for the record that Mr. Lyles had excellent, really first-rate representation in this case, and we thank you for that, and we thank the state as well. Case will be submitted. Clerk may call the next case. Thank you.